UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| PRIME ALLIANCE BANK, INC., <br><br> Plaintiff, <br><br> v. <br><br> REGENTS CAPITAL CORPORATION, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION REGARDING REGENTS CAPITAL CORPORATION'S REFUSAL TO RESPOND TO INTERROGATORIES (DOC. NO. 75)** <br><br> Case No. 1:21-cv-00031 <br><br> District Judge Howard C. Nielsen, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Prime Alliance Bank, Inc. filed a discovery motion seeking to compel Defendant Regents Capital Corporation to supplement certain interrogatory responses.[1] The court held a hearing on March 16, 2023.[2] Based on the briefing and argument at the hearing,[3] the motion is granted and Regents is ordered to supplement its responses to Interrogatories 13 through 18 as set forth below.

---

[1] (Short Form Discovery Motion Regarding Regents Capital Corporation's Refusal to Respond to Interrogatories ("Mot."), Doc. No. 75.)

[2] (*See* Minute Entry, Doc. No. 82.)

[3] After the hearing, Prime submitted a "notice of supplemental authority," presenting testimony from depositions taken after the hearing which Prime contends supports its position. (*See* Doc. No. 83.) Regents responded and objected to the notice. (*See* Doc. No. 84.) The court does not consider these post-hearing submissions, as they are unnecessary to the disposition of the motion.

1

BACKGROUND

Regents is a commercial equipment finance broker which connects firms with equipment financing needs to banks and other financial institutions.[4] Prime and Regents entered into a "Master Sale of Chattel Paper and Security Agreement" governing Prime's purchase of Regents' rights and interest in certain equipment lease papers.[5] This case concerns Prime's purchase of lease papers from Regents related to equipment leases to Mitec Powertrain Inc. ("Mitec").[6] Prime and Regents executed two "specifications" (contracts) governing the purchase of particular Mitec leases under the master agreement.[7]

Prime brought this action against Regents after Mitec defaulted on the leases, alleging Regents breached certain warranties under the master agreement.[8] As relevant here, Prime alleges Regents breached the following warranties: (1) that Regents provided to Prime "all material written information in its possession with respect to [Mitec]";[9] (2) that Regents had "no adverse credit information about [Mitec] . . . which ha[d] not been disclosed to and approved by

---

[4] (*See* Am. Compl. ¶ 6, Doc. No. 62.)

[5] (*See id.* ¶¶ 10–11.)

[6] (*See id.* ¶¶ 23, 41, 45–50.)

[7] (*See id.* ¶ 45.)

[8] (*See id.* ¶ 68.)

[9] (Ex. B to Mot., Master Sale of Chattel Paper and Security Agreement ("Master Agreement") § 4(d), Doc. No. 75-2; *see also* Am. Compl. ¶ 68(iv), Doc. No. 62.)

[Prime] in writing";[10] and (3) that the credit application "will not have been previously declined by any other financing sources."[11] Regents denies these allegations.[12]

## ANALYSIS

### A. Interrogatories 13 through 16

Interrogatories 13 and 14 ask Regents to "[i]dentify by Bates number all Documents provided by [Regents] to Prime . . . concerning Mitec, MAG [Mitec's parent company], or any contemplated or completed purchase by Prime of any instrument related to Mitec."[13] Prime asks for this information for two time periods: "before the execution of Specification 152667" (Interrogatory 13), and "after the execution of Specification 152667 but before the execution of Specification 152702" (Interrogatory 14).[14] Interrogatories 15 and 16 ask Regents to "[i]dentify by Bates number all Documents provided by Mitec or MAG to [Regents]" during the same two time periods.[15]

Regents objected to these interrogatories as "oppressive and burdensome," and stated responsive information was "set forth in documents previously produced by Regents to Prime."[16] Regents did not identify which documents contained the responsive information.[17] Regents also

---

[10] (Ex. B to Mot., Master Agreement § 4(b)(ii), Doc. No. 75-2.)

[11] (Id. § 4(b)(x).)

[12] (See Answer to Am. Compl. ¶ 68, Doc. No. 63.)

[13] (Ex. A to Mot., Resps. and Objs. to Pl.'s Second Set of Disc. Reqs. 2–3. Doc. No. 75-1.)

[14] (Id.)

[15] (Id. at 4–5.)

[16] (Id. at 2–6.)

[17] (See id.)

3

objected to the time period of the interrogatories as vague and ambiguous, asserting the two specifications were treated as a single transaction and did not contain execution dates.[18]

In its motion, Prime argues Regents should be required to provide a verified response identifying the documents Regents provided to Prime and those it received from Mitec, as requested in Interrogatories 13 through 16.[19] Prime contends a general reference to all documents produced in discovery is insufficient, noting Regents has produced more than 116,000 documents.[20] Prime also argues the information sought is central to its claim that Regents breached the warranties in the agreement by failing to disclose material written information and/or adverse credit information about Mitec before the sale to Prime.[21] Prime claims other discovery has revealed that, before the sale, Regents received audited financial statements from Mitec with notes from auditors calling into question Mitec's viability and highlighting problems with its parent company—and that Regents failed to disclose this information to Prime before the sale.[22] Prime contends any burden required to respond is proportional to the needs of the case, given the relevance of the requested information.[23]

In opposition, Regents argues requiring it to identify specific documents would be unduly burdensome because its business records are not organized in a manner which corresponds to

---

[18] (*See id.* at 3, 5.)

[19] (*See* Mot. 2–4, Doc. No. 75.)

[20] (*See id.* at 3.)

[21] (*See id.* at 2–3.)

[22] (*See id.* at 2.)

[23] (*See id.* at 2–3.)

Prime's interrogatories.[24] According to Regents, responding to the interrogatories would require designing a "multifaceted search protocol to enable a computer to harvest the electronic documents" that fit the call of the interrogatories.[25] Regents argues Prime and its counsel are capable of designing their own search protocol to locate any documents Prime believes are relevant to its claims.[26] Regents notes it produced business records for all transactions between the parties (totaling thirty lease purchases) in an "industry standard load file" which allows Prime to perform sophisticated searches.[27] Regents argues it should not be required to design a search protocol and provide verified responses under penalty of perjury, when Prime is equally capable of searching for the documents within Regents' production.[28] Finally, Regents suggests Prime's interrogatories improperly circumvent the rules governing requests for production of documents, which permit the responding party to produce documents as they are kept in the usual course of business.[29]

As an initial matter, Prime's interrogatories are not improper merely because they request identification of documents. Rule 33 provides that "[a]n interrogatory may relate to any matter

---

[24] (*See* Opp'n to Prime Alliance Bank's Disc. Mot. ("Opp'n") 2, Doc. No. 79.)

[25] (*Id.*)

[26] (*See id.* at 3.)

[27] (*Id.* at 3–4.)

[28] (*See id.* at 3, 8–11.)

[29] (*See id.* at 7–9); *see also* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."); Fed. R. Civ. P. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms").

5

that may be inquired into under Rule 26(b)."[30] Under Rule 26(b), the scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[31] Further, interrogatories seeking identification of documents supporting a party's allegations or defenses are permissible under Rule 33.[32] Thus, Prime may seek identification of documents through an interrogatory, so long as the interrogatory is relevant and proportional to the needs of the case.

Interrogatories 13 through 16 are relevant to the claims and defenses in this case. These interrogatories relate directly to the warranties Regents made in the parties' agreement—namely, that Regents provided all material written information in its possession regarding Mitec to Prime, and that Regents had no adverse credit information regarding Mitec which had not been disclosed to Prime. Prime claims Regents breached these warranties by withholding material information, while Regents denies it breached the warranties. Thus, interrogatories asking Regents to identify the documents it received from Mitec and those provided to Prime are relevant—indeed, central—to the parties' dispute.

Regents' responses to Interrogatories 13 through 16 are inadequate under Rule 33. Rule 33(d) permits a party to answer an interrogatory by referencing business records "if the burden of deriving or ascertaining the answer will be substantially the same for either party."[33] But the

---

[30] Fed. R. Civ. P. 33(a)(2).

[31] Fed. R. Civ. P. 26(b)(1).

[32] *See Mann v. XPO Logistics Freight, Inc.*, No. 16-2196-CM, 2017 U.S. Dist. LEXIS 112145, at *9 (D. Kan. July 19, 2017) (unpublished); *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) ("[I]nterrogatories may seek the identities of knowledgeable persons and supporting documents for the 'principal' or 'material' facts supporting an allegation or defense.").

[33] Fed. R. Civ. P. 33(d).

responding party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[34] This rule is not satisfied by a "wholesale dumping of documents."[35] Here, Regents responded to the interrogatories by referencing Regents' entire production of 116,000 documents. This fails to satisfy the requirements of Rule 33.

Further, where Prime's interrogatories specifically ask for identification of documents, Regents must answer by identifying particular documents—not merely referencing records to be searched. Regents is in a better position to know which documents it received from Mitec and which documents it provided to Prime during the requested time period. Regents' argument that Prime is equally capable of obtaining this information by searching Regents' production is unconvincing. For example, a search for documents related to Mitec would not necessarily reveal whether such documents were in Regents' possession during the requested time period. Regents is better able to determine whether any documents obtained in a search fit the call of the interrogatories—i.e., whether they were received from Mitec during the requested time period. And although Prime has its own list of documents disclosed by Regents before the sale,[36] Prime is entitled to find out whether Regents contends any additional documents were disclosed to Prime. Thus, Regents must answer the interrogatories by identifying documents, as the interrogatories request.

---

[34] Fed. R. Civ. P. 33(d)(1).

[35] *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (internal quotation marks omitted).

[36] (*See* Reply Mem. in Support of Prime Alliance Bank, Inc.'s Short Form Disc. Mot. 6, Doc. No. 80 (indicating that according to Prime's records, a response to the interrogatories seeking identification of documents provided by Regents to Prime would identify twenty-six documents).)

Regents has not demonstrated that responding to these interrogatories would be unduly burdensome. Regents contends it would need to hire an expert to design a search for responsive records, since they are not stored in a manner which corresponds to the interrogatories. But Regents offered no evidence regarding the burden of a search, such as the time or expense it would require. Even assuming such a search would impose some burden, Regents has not shown the burden would outweigh the likely benefit of this discovery, given the relevance of the information requested.[37]

Regents also suggests it is unable to answer the interrogatories under oath, as required under Rule 33,[38] because "a human being cannot find, review, and determine the documents that answer the interrogatories."[39] This does not excuse Regents from its obligations under Rule 33. Rule 33 provides that interrogatories to an entity must be answered "by any officer or agent, who must furnish the information available to the party."[40] Thus, to the extent the information sought is available to Regents, Regents must furnish an answer, under oath. If, despite diligent efforts, Regents is unable to identify which documents it received from Mitec and provided to Prime—notwithstanding the warranties Regents made at the time of the sale—Regents may so answer, under oath. In either case, Regents must comply with its obligation to answer the interrogatories under oath.

---

[37] *See* Fed. R. Civ. P. 26(b)(1) (factors to be considered in determining proportionality include "whether the burden or expense of the proposed discovery outweighs its likely benefit").

[38] *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

[39] (Opp'n 6–7, Doc. No. 79.)

[40] *See* Fed. R. Civ. P. 33(b)(1)(B).

Regents' final objection is to the time periods of the interrogatories. As noted above, Interrogatories 13 and 15 relate to the time period before the execution of Specification 152667, while Interrogatories 14 and 16 relate to the time period between the execution of Specification 152667 and Specification 152702. In its briefing, Regents contends it cannot separate these time periods because the two specifications were treated as a unified credit package and the parties communicated about them as a single deal.[41] Regents also notes the specifications were signed by different people and undated, making the date of execution difficult to ascertain.[42] At the hearing, Prime offered to allow Regents to answer the interrogatories for a single time period rather than parsing them out by contract. In other words, Prime indicated it would accept a single answer in response to Interrogatories 13 and 14 (seeking identification of documents provided by Regents to Prime) and a single answer in response to Interrogatories 15 and 16 (seeking identification of documents provided by Mitec and MAG to Regents). Prime also offered to change the operative date to the date the final purchase price was paid (a known date), rather than the execution date. Regents then argued at the hearing that the funding dates of the two contracts were different.

Regents cannot have it both ways. If Regents contends the two specifications were part of a unified deal and the dates of the individual contracts cannot be parsed out, Regents may answer the interrogatories for a single time period, as Prime has offered. Alternatively, if Regents contends the time periods of the two contracts are distinct, it may give separate answers for each time period. Likewise, Regents may either accept Prime's suggestion to provide answers based on the known funding date(s), or it may answer the interrogatories based on

---

[41] (*See* Opp'n 5, Doc. No. 79.)

[42] (*See id.*)

execution date(s), as written. Prime has offered reasonable proposals for clarifying the requested time period to address Regents' concerns. If Regents rejects these proposals, it must answer the interrogatories as written.

In sum, Interrogatories 13 through 16 are permissible, relevant, and proportional—and Regents' answers are inadequate. Accordingly, Regents is ordered to supplement its answers to these interrogatories. Regents must answer the interrogatories under oath, either by identifying documents as requested or by stating it is unable to identify the documents despite diligent efforts.

### B. Interrogatories 17 and 18

Interrogatory 17 asks Regents to "[i]dentify all banks, financing sources, or other business entities, other than Prime, to which [Regents] submitted information concerning Mitec for the purpose of obtaining any financing for Mitec or for the purpose of having that entity buy an instrument under which [Regents] provided financing to Mitec."[43] Interrogatory 18 asks Regents to "[d]escribe the response [Regents] received from each entity identified in response to Interrogatory No. 17, including whether the entity approved or denied any request to provide financing or to purchase an instrument from Regents as described in Interrogatory No. 17."[44] Regents objected to these requests as "oppressive and burdensome," and stated responsive information was "set forth in documents previously produced by Regents to Prime."[45] Again, Regents did not identify which documents contained the responsive information.[46]

---

[43] (Ex. A to Mot., Resps. and Objs. to Pl.'s Second Set of Disc. Reqs. 6–7. Doc. No. 75-1.)

[44] (*Id.* at 8.)

[45] (*Id.* at 7–9.)

[46] (*See id.*)

Prime contends these interrogatories are relevant to whether Regents breached the warranty stating that Mitec's credit application had not been declined by other financing sources.[47] Prime asserts other discovery has revealed that other banks declined to extend credit to Mitec before Regents submitted the application to Prime.[48] Regents' opposition does not specifically address these interrogatories, but Regents argues generally that Prime is capable of performing a search to find the information requested in all the interrogatories at issue.[49]

Interrogatories 17 and 18 are relevant and proportional to the needs of the case. These interrogatories seek a list of the financing sources to which Regents submitted financing applications for Mitec, and the responses received. This information is directly relevant to whether Regents breached the warranty stating that Mitec's credit application had not been declined by other financing sources. Regents has offered no evidence of the burden required to furnish this information. Further, Regents is plainly in a better position to know which banks it submitted financing applications to, and what those banks' responses were. Indeed, it is unclear how Prime could design a search for such information without knowing which banks were solicited. Given the relevance of the requested information, any burden required to answer does not outweigh the likely benefit of this discovery.

Regents' responses to these interrogatories are also inadequate. As discussed above, Regents' reference to its entire document production fails to comport with the requirement of Rule 33(d) to "specify[] the records that must be reviewed, in sufficient detail to enable the

---

[47] (*See* Mot. 4, Doc. No. 75.)

[48] (*See id.*)

[49] (*See* Opp'n, Doc. No. 79.)

interrogating party to locate and identify them as readily as the responding party could."[50]

Therefore, Regents must supplement its responses and either directly answer the interrogatories or specify the records where the answers may be found.

## CONCLUSION

Prime's motion[51] is GRANTED and Regents is ordered to supplement its responses to Interrogatories 13 through 18, consistent with this order.

DATED this 28th day of April, 2023.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[50] Fed. R. Civ. P. 33(d)(1).

[51] (Doc. No. 75.)